IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MATTHEW LABREC,

                                  Plaintiff,

          v.

SALAM SYED, LUCAS WEBER,                        OPINION and ORDER
RACHEL PAFFORD, TRISHA ANDERSON,
MELISSA THORNE, NEAVER WALTERS,                    19-cv-804-jdp
KATHY WHALEN, JESSE BEAVER,
DENISE VALERIUS, and FERN SPRINGS,

                                  Defendants.

---

In September 2016, pro se plaintiff and prisoner Matthew LaBrec injured his right hand when he punched a cell door. He is suing nine staff members under the Eighth Amendment and state law for failing to adequately treat the injury. He is also suing a prison doctor for failing to adequately treat nerve pain that he developed in 2017.

Defendants move for summary judgment on all of LaBrec's claims. Dkt. 33.[1] I conclude that LaBrec may proceed to trial on his claims that defendant Trisha Anderson, a nurse, failed to adequately treat LaBrec's hand injury and that Salam Syed, a doctor, failed to adequately treat LaBrec's nerve pain. LaBrec has adduced sufficient evidence to allow a reasonable jury to find that Anderson and Syed were negligent and acted with deliberate indifference. I will grant summary judgment to defendants on the remaining claims, for the reasons explained below.

---

[1] Defendants' motion includes LaBrec's claims against Fiona Gibbons, but LaBrec has since dismissed his claims against that defendant. *See* Dkt. 60.

BACKGROUND

The following facts are undisputed unless otherwise noted.

On September 27, 2016, LaBrec punched a cell door at Columbia Correctional Institution (CCI), hurting his right hand and wrist. (Neither side explains why LaBrec did this, and the reason isn't relevant to his claims.) Later that day, defendant Trisha Anderson, a prison nurse, examined LaBrec's hand. She gave him a liquid dose of ibuprofen and advised him to use ice for 48 hours.

Defendant Fern Springs is a physician and an independent contractor who sometimes works at CCI. She "was informed" about LaBrec's hand injury "later in the day" on September 28. Dkt. 72, ¶¶ 16, 32. She ordered an "offsite evaluation" and prescribed ibuprofen in the meantime. After Springs orders an offsite evaluation, she has no control over scheduling or transportation for that evaluation.

On September 29, LaBrec was taken to Divine Savior Hospital. The hospital physician, Frank Walter, diagnosed LaBrec's injury as a carpal-metacarpal fracture dislocation.[2] The same day, Walter performed surgery on LaBrec, placing four 0.62 K-wires across the fourth and fifth metacarpals and into the third metacarpal and one wire to the capitate and one wire to the hamate. There were no complications during surgery.

LaBrec was discharged the same day. Walter prescribed hydrocodone 5/325 (Vicodin), which is a combination of hydrocodone and acetaminophen. Springs prescribed tramadol and ibuprofen instead because tramadol has a lower risk of addiction than hydrocodone and

---

[2] Defendants refer to the last name of the doctor as both "Waters" and "Walter" in their summary judgment materials. A review of LaBrec's medical records indicate that the correct name is "Walter." See, e.g., Dkt. 36-1, at 1.

because tramadol is often prescribed after surgery in conjunction with a nonsteroidal medication, such as ibuprofen. In October 2016, LaBrec complained to multiple nurses that his medication wasn't effective with relieving his pain.

On October 28, LaBrec had a follow-up appointment with Walter at the hospital. Walter removed the hardware in LaBrec's hand. Neither side cites any discharge instructions provided by Walter.

Defendant Salam Syed, a physician employed by the Department of Corrections, first became involved with LaBrec's medical care in July 2017. In September 2017, Syed prescribed amitriptyline for nerve pain in LaBrec's right hand. In January 2018, Syed diagnosed LaBrec with ulnar neuropathy and increased his dose of amitriptyline. When LaBrec reported "adverse side effects" from the amitriptyline, Syed prescribed ibuprofen instead. From April 2018 to September 2018, LaBrec complained several times to Syed that the medication wasn't effective, but Syed declined to adjust LaBrec's treatment. In September 2018, LaBrec was transferred to a different institution, and he received a prescription for gabapentin, which he says greatly reduced his nerve pain. Dkt. 64, ¶¶ 165–69.

I will discuss additional facts as they become relevant to the analysis.

## ANALYSIS

### A. Legal standard

LaBrec's claims relate to four broad issues: (1) the treatment he received immediately after his injury; (2) the management of his symptoms after his return from the hospital; (3) the delay in obtaining a follow-up appointment with an offsite doctor; and (4) the treatment he

received for nerve pain in 2018.[3]  All of LaBrec's claims arise under the Eighth Amendment to the U.S. Constitution and Wisconsin's common law of negligence.

A prison official violates a prisoner's Eighth Amendment right to medical care if the official is "deliberately indifferent" to a "serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). A "serious medical need" is a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584–85 (7th Cir. 2006). "Deliberate indifference" means that the defendant is aware of an excessive risk to the prisoner's health or safety, but the defendant is disregarding the risk by consciously failing to take reasonable measures to help the prisoner. *See Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997). In the medical context, deliberate indifference may be inferred when the defendant's conduct is "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006).

Thus, a claim under the Eighth Amendment for failing to provide adequate medical care has three elements:

(1) Did the prisoner need medical treatment?

(2) Did the defendant know that the prisoner needed treatment?

---

[3] I assumed in the screening order that LaBrec's nerve pain was related to his hand injury, which is why I allowed LaBrec to join the claim under Federal Rule of Civil Procedure 20. Neither side cites evidence in their summary judgment submissions that LaBrec's nerve pain in 2018 was related to his 2016 injury, but defendants don't contend that the claim against Syed was improperly joined, so I will consider it on the merits.

(3) Despite his or her awareness of the need, did the defendant consciously fail to take reasonable measures to provide the necessary treatment? *See* Seventh Circuit Pattern Jury Instruction 7.15.

Wisconsin law defines medical negligence as the failure of a medical professional to "exercise that degree of care and skill which is exercised by the average practitioner in the class to which he belongs, acting in the same or similar circumstances." *Sawyer v. Midelfort*, 227 Wis.2d 124, 149, 595 N.W.2d 423, 435 (1999); *Schuster v. Altenberg*, 144 Wis. 2d 223, 229, 424 N.W.2d 159, 161–62 (1988). Like all claims for negligence, a claim for medical malpractice includes the following four elements: (1) a breach of (2) a duty owed (3) that results in (4) harm to the plaintiff. *Paul v. Skemp*, 2001 WI 42, ¶ 17, 242 Wis. 2d 507, 625 N.W.2d 860 (2001). Thus, to establish a prima facie medical negligence claim, a plaintiff must show that the defendants failed to use the required degree of skill exercised by an average respective medical professional, that plaintiff was harmed, and that there is a causal connection between the defendants' failure and plaintiff's harm. Wis. JI–Civil 1023.

In response to a motion for summary judgment, it is the plaintiff's burden to show that a reasonable jury could find in his favor on the elements of his claims. *Henderson v. Sheahan*, 196 F.3d 839, 848 (7th Cir. 1999). Defendants don't question whether LaBrec had a serious medical need, so I need not consider that issue.

## B.  Treatment immediately after injury

I allowed LaBrec to proceed on the following claims related to events before he was taken to the hospital on September 29, 2016:

- Trisha Anderson refused to do anything other than give LaBrec ibuprofen after he hurt his hand, even though it was obvious that his hand was broken.

5

- Neaver Walters refused to take any action when LaBrec told her that his pain "was at a 10 out of 10" and showed her his swollen hand.

- Lucas Weber refused to allow LaBrec to be taken to the hospital, even after a physician ordered it.

- Jesse Beaver observed that LaBrec should have been taken to the hospital immediately, but she refused to order that, even though she had the authority to do so.

- After LaBrec broke his hand and the security director refused to allow LaBrec to be taken to the hospital, Fern Springs failed to provide any other care.

Dkt. 7 and Dkt. 16.

Defendants' summary judgment brief includes arguments on all of these claims, but LaBrec's brief discusses only the claims against Anderson and Beaver in his opposition brief. "Failure to respond to an argument . . . results in waiver," *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010), and the court isn't required to scour the record to construct an argument on LaBrec's behalf, *Jeffers v. Commissioner*, 992 F.3d 649, 653 (7th Cir. 2021). So I will limit my discussion to the claims against Anderson and Beaver and grant summary judgment to defendants on the others.

### 1. Trisha Anderson

Anderson was the nurse who first assessed LaBrec's hand injury on September 27, 2016. LaBrec challenges her decision to give him ibuprofen and advise him to use ice rather than recommending more urgent care, such as requesting that he be taken to the hospital. LaBrec says that Anderson's decision resulted in a two-day delay before he was taken off site on September 29, during which he experienced "a 10 out of 10 level pain" and was unable to sleep for two nights. Dkt. 1, ¶ 27 and Dkt. 64, ¶¶ 11, 29. There is no dispute that two days of unnecessarily prolonged pain is a sufficient injury to support a negligence or Eighth

Amendment claim. *See Lewis v. McLean*, 864 F.3d 556, 563–64 (7th Cir. 2017) ("[E]ven brief, unexplained delays in treatment may constitute deliberate indifference."); *Grieveson v. Anderson*, 538 F.3d 763, 779–80 (7th Cir. 2008) (less than two-day delay may be sufficient). The question is whether a reasonable jury could find that Anderson acted negligently and consciously refused to take reasonable steps to provide LaBrec with appropriate care.

LaBrec alleges the following facts about the state of his hand when Anderson examined him:

- His hand was "visibly deformed": "his knuckles were displaced, causing a large 'hump' on the top of his hand, with the right side being scrunched together." Dkt. 1, ¶ 11 and Dkt. 64, ¶ 24.

- He told Anderson that his hand became swollen immediately after he punched the door. Dkt. 64, ¶ 15.

- He told Anderson that the pain felt "like a bolt of lightning . . . shoot[ing] up his arm." *Id.*

- He could not move two of his fingers. Dkt. 1, ¶ 11.

- He told Anderson that he was nauseated. *Id.*, ¶ 15.

- He was experiencing "cold sweats." *Id.*

- When Anderson touched his hand, he winced and pulled away in pain. *Id.*, ¶ 16.

- He told Anderson that he believed his hand was broken and that ibuprofen wouldn't help. *Id.*, ¶¶ 19, 20.[4]

---

[4] Most of these allegations come from LaBrec's verified complaint rather than his proposed findings of fact or the declaration that he submitted with his summary judgment materials. His only reference to the relevant allegations in his complaint is in a string cite at the end of a response to one of defendants' proposed findings of fact about defendant Springs's opinion of Anderson's conduct. *See* Dkt. 72, ¶ 15. A verified complaint can be admissible evidence at summary judgment if it otherwise satisfies the requirements for a declaration, *Ford v. Wilson*, 90 F.3d 245, 246–47 (7th Cir. 1996), but this court's procedures generally require parties to clearly set forth their version of the facts in their own proposed findings of fact and responses to the other side's proposed findings of fact. *See* Preliminary Pretrial Packet, Motions for Summary Judgment I.B., I.C., and II.D.3, Dkt. 24. LaBrec should not bury key evidence in a

I agree with LaBrec that his allegations are similar to those in *Smith v. Warner*, in which Judge Barbara Crabb denied summary judgment on claims under the Eighth Amendment and common-law negligence regarding an alleged failure to treat a prisoner's fractured hand. No. 15-cv-633-bbc, 2017 WL 4221094, at *6 (W.D. Wis. Sept. 21, 2017). As in this case, the defendant in *Smith* was a nurse who prescribed ice and ibuprofen. Judge Crabb concluded that summary judgment was inappropriate in light of the prisoner's allegations that "his hand was red and swollen with an obvious deformity" when the nurse examined him, his hand had a limited range of motion, and he told the nurse that his hand felt like it was "being stabbed repeatedly by a butcher's knife." *Id.*

Despite LaBrec's reliance on *Smith* in his opposition brief, defendants do not attempt to distinguish the case or even mention it in their reply brief. And they don't cite any testimony from Anderson explaining her treatment decision. Under these circumstances, a reasonable jury could find that Anderson was both negligent and deliberately indifferent by failing to seek emergency care for LaBrec or at least further guidance from a physician.

Defendants raise several arguments in their brief, but none are persuasive. First, they rely on Anderson's treatment notes, which say that there was no "gross deformity" in LaBrec's hand when she examined it. But I must accept LaBrec's testimony as true at the summary judgment stage. *See Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).

---

string cite in response to a marginally related proposed finding of fact, without explaining the substance of the cited evidence. Even pro se parties are expected to follow court procedures, *Myles v. U.S.*, 416 F.3d 551, 552 (7th Cir. 2005), so I expect an experienced and capable litigator like LaBrec to take greater care in presenting his cases to the court in the future.

Second, defendants cite the declaration of defendant Fern Springs, the physician who ordered that LaBrec be taken to taken to the hospital. Spring states that "Anderson made her best judgment at the time and ice and ibuprofen were some of the potential appropriate treatments." Dkt. 36, ¶ 6. But Springs's statement has no evidentiary value. She admits that she "did not see LaBrec's hand at the time of the initial injury," so she "can provide no assessment." *Id.* In any event, her own actions are inconsistent with a view that Anderson acted appropriately. When Springs learned about LaBrec's injury, she ordered an offsite evaluation, even without examining LaBrec herself. She doesn't explain that discrepancy.

Third, defendants say that LaBrec's negligence claim against Anderson must be dismissed because he didn't file a notice of claim, as required by Wis. Stat. § 893.82. As defendants acknowledge, "medical malpractice" claims aren't subject to Wisconsin's notice-of-claim requirements. *See* Wis. Stat. § 893.82(5m). But defendants contend that medical malpractice claims are limited to physicians and nurse anesthetists in Wisconsin, so LaBrec's claims against Anderson can't be construed as medical malpractice claims under § 893.82(5m). They rely on Wisconsin Statutes Chapter 655, which governs medical malpractice actions against "health care providers," as defined in the statute. Because the definition of "health care providers" in Chapter 655 includes physicians and nurse anesthetists—but not nurses—defendants contend that Anderson can't be sued for "medical malpractice," and LaBrec's claim against her doesn't fall within § 893.82(5m).

I have previously rejected defendants' argument multiple times. In *Smith v. Hentz*, I concluded that "a claim for 'medical malpractice' is simply a claim that a medical care provider's actions fell below the requisite standard of care," and it is not limited to claims governed by Chapter 655. No. 15-cv-633, 2018 WL 1400954, at *3 (W.D. Wis. Mar. 19, 2018). In several

subsequent cases, I have concluded that medical negligence claims brought against prison nurses fall within the medical malpractice exception for filing a notice of claim in § 893.82(5m). *See Schneider v. Kostohryz*, No. 19-cv-756-jdp, 2021 WL 2806225, at *11 (W.D. Wis. July 6, 2021); *Taylor v. Syed*, No. 19-cv-299-jdp, 2020 WL 1939011, at *1 (W.D. Wis. Apr. 22, 2020); *Williams v. Anderson*, No. 17-cv-304-jdp, 2019 WL 6530048, at *6 (W.D. Wis. Dec. 4, 2019). Defendants don't acknowledge any of these cases in their brief. Defendants are free to continue raising this argument for the purpose of preserving it for appeal, but I expect them to acknowledge that the court has already resolved the issue against them.

Fourth, defendants contend that an expert is always required to establish the standard of care in medical practice claims. But I have rejected that view too. "[N]o expert is necessary when common knowledge provides a basis for finding negligence." *Jones v. Edge*, No. 16-cv-848-jdp, 2018 WL 2301846, at *4 (W.D. Wis. May 21, 2018). *See also Gil v. Reed*, 535 F.3d 551, 557–58 (7th Cir. 2008) (expert testimony is not needed to establish the standard of care under Wisconsin law when a plaintiff "show[s] that an ordinary person could conclude from common experience that he could not have been injured had his medical providers exercised care").

Again, *Smith* is instructive. In that case, Judge Crabb concluded that "[a] lay jury could conclude that if a patient's hand is swollen, weak, deformed and in severe pain after a bad fall, ice and Ibuprofen are not going to be sufficient" to satisfy the standard of care. 2017 WL 4221094, at *7 (W.D. Wis. Sept. 21, 2017). LaBrec's allegations in this case are at least as serious as those in *Smith*, so I conclude that expert testimony isn't required on his negligence claim against Anderson.[5]

---

[5] Defendants also say that staff weren't available on September 28 to transport LaBrec to the hospital. Dkt. 72, ¶ 20. Even if I were to assume that a staffing shortage would be an adequate justification for delaying treatment, defendants say nothing about the staff available on

I will deny defendants' motion for summary judgment on LaBrec's claim that Anderson failed to provide adequate care for his hand injury when she examined him on September 27, 2016.

### 2. Jesse Beaver

Beaver is a nurse employed at CCI. Beaver didn't examine LaBrec, but LaBrec alleged in his complaint that he spoke to Beaver when Beaver was handing out medication on the evening of September 28. Dkt. 1, ¶ 26. LaBrec says that he told Beaver that he was in severe pain and hadn't yet seen a doctor. *Id*, ¶ 27. Beaver gave LaBrec ibuprofen and put him on a list to be seen by the doctor the next day. *Id.*, ¶ 28.

LaBrec's brief includes only one sentence about his interaction with Beaver on September 28: "Defendant Jesse Beaver also had the opportunity to at the very least call [the doctor] when he evaluated my hand on 9/28/2016, [but] he did nothing but provide me with a dose of Ibuprofen." Dkt. 61, at 6. I conclude that LaBrec's allegations aren't sufficient to support a claim under the Eighth Amendment or state law.

The context of Beaver's interaction with LaBrec is important. Beaver didn't meet with LaBrec to evaluate his hand injury; Beaver was simply handing out medication. At that point, LaBrec had already been evaluated by Anderson, and Springs had ordered that LaBrec be seen off site. Both Anderson and Springs had prescribed ibuprofen for the pain. Beaver was entitled to rely on the assessments of other medical staff who had examined LaBrec. *See McCann v. Ogle Cty., Ill.*, 909 F.3d 881, 887 (7th Cir. 2018). Moreover, LaBrec identifies no reason why Beaver

---

*September 27*, when Anderson examined LaBrec, and they cite no evidence that Anderson took staffing levels into account in deciding how to treat him.

would have believed that calling Springs—who had already made her own medical determination—would lead to different care for LaBrec.

I will grant defendants' motion for summary judgment on LaBrec's claim against Beaver.

## C. Symptom management after return from the hospital

I allowed LaBrec to proceed on the following claims about managing his symptoms after he returned from the hospital:

- Fern Springs disregarded the prescription the surgeon gave LaBrec for Vicodin, changing it to tramadol and ibuprofen without using any medical judgment.

- Melissa Thorne told LaBrec to "stop punching walls" when LaBrec told her that his pain medication was not helping his pain; she gave him a similar response when he made the same complaint on October 3.

- LaBrec informed Denise Valerius multiple times in October 2016 that his pain was "not manageable," but she failed to do anything to help him.

- Trisha Anderson refused to do anything when LaBrec told her that his pain medication was ineffective.

- When LaBrec complained that his pain was "a 10 out of 10" and his hand was "oozing pus" and bleeding, Kathy Whalen told LaBrec that he was "lucky he was even treated" and that he "should remember this lesson the next time he wanted to punch something."

- Fern Springs was informed that LaBrec's wound was bleeding excessively, but she refused to take any action.

- Neaver Walters refused to take any action when LaBrec told her that his hand was infected.

Defendants' summary judgment brief includes arguments on all of these claims, but LaBrec's brief addresses only the claims against Thorne, Syed, and Anderson, as well as the claim that Spring disregarded a surgeon's prescription for hydrocodone 5/325. I will limit my discussion to the claims discussed in LaBrec's brief and grant summary judgment to defendants on the others. *See Bonte*, 624 F.3d at 466.

12

1. **Fern Springs**

LaBrec contends that Springs violated his rights by changing the hospital doctor's prescription for hydrocodone and acetaminophen to tramadol and ibuprofen after LaBrec was discharged from the hospital. But medical staff are entitled to deference when choosing an appropriate pain reliever. *See Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("Using [pain killers] entails risks that doctors must consider in light of the benefits. . . . Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations."). And narcotics impose heightened risks of abuse and addiction, so it is appropriate for medical staff to be hesitant before prescribing them. *See McGhee v. Suliene*, No. 13-cv-67-bbc, 2014 WL 576150, at *11 (W.D. Wis. Feb. 12, 2014); *Banks v. Cox*, No. 09–cv–9–bbc, 2010 WL 693517, *7 (W.D. Wis. 2010); *DeBoer v. Luy*, No. 01–C–382–C, 2002 WL 32345414, *4 (W.D. Wis. 2002). I am not aware of any case in which this court, the Court of Appeals for the Seventh Circuit, or the Supreme Court has held that a prisoner was constitutionally entitled to narcotics.

The fact that another doctor prescribed a different medication isn't dispositive. Springs was entitled to make her own assessment. *See Pulera v. Sarzant*, 966 F.3d 540, 552 (7th Cir. 2020) (rejecting claim that jail doctor violated the Constitution by giving him a substitute for his prescription medication); *Burton v. Downey*, 805 F.3d 776, 785–86 (7th Cir. 2015) (doctor's refusal to prescribe narcotic didn't violate detainee's constitutional rights, even though another doctor had prescribed it); *Holloway v. Delaware County Sheriff*, 700 F.3d 1063, 1073–74 (7th Cir. 20212) (doctor's decision to substitute ibuprofen and acetaminophen for Oxycontin prescribed by previous doctor didn't violate the Constitution). LaBrec cites no evidence that a combination of tramadol and ibuprofen is less effective than hydrocodone and acetaminophen

13

for treating pain, or, if they are, that Springs knew that, or even should have known that. *See Holloway*, 700 F.3d at 1073 (rejecting deliberate indifference claim when "[t]here is no evidence that [the defendants] intended to cause [the plaintiff] pain or that [the defendants] knew the [prescribed medication] would be insufficient to alleviate [the plaintiff's] symptoms).

LaBrec has failed to adduce evidence that Springs's decision to prescribe tramadol and ibuprofen rather than hydrocodone and acetaminophen was negligent or deliberately indifferent. I will grant summary judgment to Springs on this claim.

### 2.  Melissa Thorne

Melissa Thorne was a nurse at the prison. LaBrec's claim against her arises out of three health services request that he submitted to her. First, in a request dated September 30, 2016, LaBrec wrote that he was in "severe" pain, and the tramadol and ibuprofen weren't effective. Dkt. 36-1, at 42. In response, Thorne wrote, "Stop punching walls/doors. You do not have anything stronger ordered." *Id.* In a request dated October 3, LaBrec again complained that he was in severe pain, and the medications weren't working. *Id.* at 40. Thorne wrote, "see previous response." *Id.* In a request dated October 8, LaBrec again complained that his medication wasn't effective at managing his pain. In response, Thorne wrote that LaBrec had a "follow up scheduled." *Id.* at 39.

LaBrec says that Thorne violated his rights by making sarcastic comments and failing to refer his requests "to anyone." Dkt. 61. But sarcastic or even "callous" statements aren't enough to show a violation of a prisoner's rights. *See Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866 (7th Cir. 2013) (statement from doctor that "he didn't care how much pain [the plaintiff] was in or how bad [his] shoulder hurt" didn't violate the Eighth Amendment). The important question relates to what a health care provider does, not what she says. *Id.*

14

It is true that Thorne didn't offer additional treatment in response to LaBrec's first two requests. But she noted that LaBrec did not have stronger medication ordered for him. Under the circumstances, that was a reasonable response. LaBrec started complaining about his medication almost immediately after he returned from the hospital. "The Eighth Amendment does not a give a prisoner a right to treatment on demand." *Peterson v. Meisner*, No. 15-cv-49-jdp, 2017 WL 5054729, at *12 (W.D. Wis. Nov. 2, 2017). LaBrec cites no authority for the view that he was entitled to additional treatment immediately after he determined that he wasn't satisfied with the treatment he was receiving. It was reasonable for prison medical staff to wait a few days to allow the medication to work before considering changes.

Medical staff may violate the law if they persist with treatment after it becomes clear that it isn't effective. *See Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). But that's not what Thorne did. In response to LaBrec's third request, Thorne told him that he had a follow-up appointment scheduled. The parties don't say whether Thorne or someone else scheduled that appointment, but, regardless, LaBrec doesn't explain what additional steps Thorne should have taken at that point. It's undisputed that Thorne couldn't change LaBrec's prescription herself, so a follow-up medical appointment would allow an evaluation to determine whether changes should be made.

The court will grant summary judgment to Thorne on LaBrec's claims under both the Eighth Amendment and state law.

### 3. Trisha Anderson

LaBrec alleges that he complained to Anderson during an October 12 appointment that his medications weren't working, the pain was "intolerable," and he was having "severe sleep

issues" because of the pain. Dkt. 1, ¶ 41. She told him she wasn't "going to give him anything else for his pain," and she refused his request to make an appointment with a doctor. *Id.*, ¶ 42.[6]

Defendants don't dispute LaBrec's allegations. And defendants didn't submit testimony from Anderson or anyone else that explains why Anderson refused to act. By October 12, LaBrec had been consistently complaining about his pain for two weeks. Anderson didn't have the authority to prescribe different medication, but she could have referred LaBrec to a doctor. *See Dobbey v. Mitchell-Lawshea*, 806 F.3d 938, 941 (7th Cir. 2015) (prison staff may violate the Eighth Amendment if they fail to notify those who have the authority to help the prisoner). Defendants don't cite any evidence suggesting that it would be appropriate to refuse to consider adjusting LaBrec's medications after they had been ineffective for two weeks. *See Berry*, 604 F.3d at 442–43 (reasonable jury could find that nurse was deliberately indifferent by failing to seek new guidance from doctor after prisoner's medications were ineffective for several weeks). In fact, LaBrec's discharge instructions state that a physician should be notified if his "pain [is] uncontrolled by pain medications." Dkt. 36-1, at 7. Under these circumstances, a reasonable jury could find that Anderson was negligent and deliberately indifferent to LaBrec's pain by failing to take any action.

I will deny defendants' motion for summary judgment on this claim.

**D. Follow-up medical care**

I allowed LaBrec to proceed on the following claims related to follow-up care that he needed after he returned from the hospital:

---

[6] In his brief, LaBrec says that he also complained to Anderson on September 30 and October 21, Dkt. 61, at 6, but he didn't include those allegations in his complaint. A plaintiff may not amend his complaint through a summary judgment brief, *Anderson v. Donahoe*, 699 F.3d 989, 998 (7th Cir. 2012), so I haven't considered the new allegations.

- Fern Springs disregarded instructions from the surgeon that LaBrec needed a follow-up appointment within 10 to 14 days.

- Rachel Pafford failed to schedule a follow-up visit to the surgeon until two weeks after the date in LaBrec's discharge instructions, which caused an "infection, pain and suffering."

- LaBrec complained to Denise Valerius in January and April 2018 that he had not received treatment ordered by a doctor in August 2017, including an x-ray and a wrist brace, but she failed to do anything to help him.

Defendants' summary judgment brief includes arguments on all three of these claims, but LaBrec's brief addresses only the claim against Pafford. I will limit my discussion to that claim and grant summary judgment to defendants on the claims against Valerius and Springs. *See Bonte*, 624 F.3d at 466.

When LaBrec was released from the hospital, his discharge instructions stated that he should return to see Dr. Walter in 10–14 days for a new x-ray and to remove his pins. Dkt, 36-1, at 3, 6. That didn't happen. No follow-up was scheduled until October 27, when Springs says she "discovered" that no one else had scheduled the appointment. Dkt. 36, ¶ 37. At that point, LaBrec promptly received an appointment the following day. Dkt. 72, ¶ 70.

There is no dispute for the purpose of summary judgment that it was the responsibility of Rachel Pafford, a medical assistant, to schedule the follow-up appointment. Defendants offer no excuse for her failure to do so, but they say that there is no evidence that the delay harmed LaBrec. Dkt. 34, at 15. LaBrec doesn't respond to that argument in his opposition brief, and there is nothing in the hospital's records from October 28 indicating that the delay caused a complication. *See* Dkt. 36-1, at 16. LaBrec stated in his complaint that the delay led to an infection, but LaBrec doesn't dispute now that the likely cause of his infection was that he removed his soft cast after getting it wet. Dkt. 72, ¶ 57. He cites no admissible evidence that the delay harmed him. Harm is an element of LaBrec's claims under both state and federal law,

17

*see Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013); *Paul*, 2001 WI 42, at ¶ 17 so I will grant summary judgment to Pafford.

### E. Salam Syed

I allowed LaBrec to proceed on a claim that Syed continued to prescribe Tylenol and ibuprofen for LaBrec even after it was clear that the medication wasn't effective. LaBrec also seems to be contending in his summary judgment materials that Syed shouldn't have prescribed ibuprofen in the first place, both because ibuprofen hadn't worked after LaBrec injured his hand in 2016 and because ibuprofen isn't an appropriate medication for nerve pain. Those contentions are outside the scope of the lawsuit, but even if they weren't, they would fail. Even if ibuprofen hadn't been effective in relieving pain for an acute injury, that isn't evidence that it would be ineffective for *any* pain that LaBrec experienced. And LaBrec doesn't cite any evidence that it falls outside the standard of care to prescribe ibuprofen for nerve pain.

But a reasonable jury could find in LaBrec's favor on his claim that Syed continued prescribing ibuprofen despite LaBrec's protestations that the medication wasn't working. LaBrec alleges that he continued complaining about pain to Syed between April and September 2018, but Syed refused to make any changes to LaBrec's treatment. Dkt. 64, ¶¶ 157–64. Again, persisting with ineffective treatment without a medical basis can be both negligent and deliberately indifferent. *See Berry*, 604 F.3d at 441. Syed didn't provide any testimony explaining why he refused to change LaBrec's medication or provide additional treatment. His notes indicate that LaBrec was "seeking . . . narcotics," Dkt. 36-2, at 219, but LaBrec denies this, Dkt. 64, ¶¶ 159, 162–63, and I must accept LaBrec's statements as true for the purpose of defendants' motion for summary judgment.  So I will deny defendants' motion for summary judgment on LaBrec's claims against Syed.

**F.  New claims**

LaBrec raises several new claims in his summary judgment brief: (1) Anderson failed to provide him with an accommodation for showering with his cast and bandages, Dkt. 61, at 6; (2) Beaver ignored LaBrec's complaints about pain on October 7 and 9, 2016, *id.*; (3) Whalen, Walters, and Anderson "failed to exercise the proper standard of care when cleaning [LaBrec's] pin cites," *id.* at 7; and (4) Springs didn't examine LaBrec until October 27, 2016, *id.* I did not allow LaBrec to proceed on any of these claims, and he doesn't say that he included allegations about these claims in his complaint. As already noted, a plaintiff may not amend his complaint in a summary judgment brief, *Anderson*, 699 F.3d at 998, so I decline to consider these claims now.

## ORDER

IT IS ORDERED that:

1.  Defendants' motion for summary judgment, Dkt. 33, is DENIED on the following claims under both the Eighth Amendment and Wisconsin's common law of negligence: (1) Trisha Anderson failed to adequately treat plaintiff Matthew LaBrec's hand injury when she examined him on September 27, 2016, and October 12, 2016; and (2) Salam Syed failed to adequately treat LaBrec's nerve pain in 2018.

2.  Defendants' motion for summary judgment is GRANTED in all other respects. The following defendants are DISMISSED with prejudice: Lucas Weber, Rachel Pafford, Denise Valerius, Melissa Thorne, Neaver Walters, Kathy Whalen, Fern Springs, and Jesse Beaver.

3.  The clerk of court is directed to set a scheduling conference with Magistrate Judge Stephen Crocker to determine a trial date and related deadlines.

Entered September 16, 2021.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge

20