IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MATTHEW LABREC,

                Plaintiff,

v.

SALAM SYED and TRISHA ANDERSON,

                Defendants.

OPINION and ORDER

19-cv-804-jdp

---

This case is scheduled for a jury trial on February 13, 2023, on plaintiff Matthew LaBrec's claims under the Eighth Amendment and state law that defendant Trisha Anderson (a nurse) failed to properly treat his hand injury in 2016 and defendant Salam Syed (a doctor) failed to properly treat his nerve pain in 2018. This opinion will address the parties' motions in limine. Dkt. 101 and Dkt. 110.

ANALYSIS

A.  **LaBrec's motions in limine**

    1.  **Prior convictions**

LaBrec seeks to exclude evidence about his prior convictions other than to establish that they are felonies. In his motion, LaBrec lists convictions for possession of a firearm by a felon, armed robbery with use of force, throw/discharge bodily fluid at public safety worker, battery, possession of methamphetamine, theft—business setting less than $2,500, possession of drug paraphernalia, criminal damage to property, resisting an officer, and burglary—building or dwelling.

Defendants oppose this motion with respect to the 2017 conviction for armed robbery with use of force and the 2014 conviction for possession of methamphetamine, both of which were felonies. Defendants say nothing about the other convictions, so the court will grant the motion for those convictions.

As for the robbery and possession convictions, Federal Rule of Evidence 609(a)(1) allows a party in a civil case to introduce any felony conviction that is less than 10 years old unless its probative value is substantially outweighed by the danger of unfair prejudice. The two convictions are both felonies that are less than 10 years old. LaBrec contends that the convictions are unfairly prejudicial, but he doesn't explain why. Although neither of LaBrec's convictions is especially relevant to his honesty, neither crime is so sensational or violent that it poses a danger of unfairly prejudicing the jury.

The court will allow defendants to introduce evidence about the 2017 armed robbery conviction and the 2014 methamphetamine possession conviction. But defendants will be limited to "reveal[ing] the title, date, and disposition of the offense." *United States v. Lewis*, 641 F. 3d 773, 783 (7th Cir. 2011).

**2.  Previous lawsuits and grievances**

LaBrec seeks to exclude evidence of his other lawsuits, claims, or grievances. Defendants object on the ground that LaBrec's "overall pain complaints . . . informed Dr. Syed's treatment decisions." Dkt. 118, at 2–3. As an example, defendants say that "LaBrec's repeated requests for stronger painkillers . . . relate[] to Dr. Syed's belief that LaBrec was malingering and drug-seeking." *Id.* at 3.

LaBrec's motion is limited to lawsuits, claims, and grievances. So it wouldn't apply to verbal complaints that LaBrec made to Syed or to health services requests. Defendants don't

identify any specific grievances they want to introduce, but a grievance wouldn't be relevant unless Syed reviewed it and then relied on it in making a treatment decision.

Defendants have not identified any relevant lawsuits, claims, or grievances, so the court will grant this motion. If there is a specific grievance that Syed relied on in making treatment decisions, defendants should identify that grievance at the final pretrial conference.

### 3. Sequestering witnesses

The parties agree that all nonparty witness shall be sequestered.

### 4. Witnesses not previously disclosed

Neither side identifies any new witnesses, so this motion will be granted as unopposed.

### 5. Settlement negotiations

The parties agree that they may not offer evidence about their settlement negotiations.

### 6. Awards

LaBrec seeks to exclude awards or commendations received by the defendants. Defendants contend that they should be permitted to present evidence about "honors" that are "relevant to the care provided or to the issue of punitive damages." Dkt. 118, at 3. But defendants don't explain how honors would be relevant to either issue, and it's not apparent how honors would inform the reasonableness of a particular medical decision or assist the jury in determining whether there is a need to punish or deter a defendant for violating LaBrec's rights.

The court will grant this motion. If defendants believe that a particular award, commendation, or honor is relevant to a claim or defense in this case, they should raise that issue at the final pretrial conference.

### 7. Under color of law

Plaintiffs ask for a finding that both defendants acted under color of law. Defendants don't oppose the motion, so the court will treat defendants' response as a stipulation that both defendants acted under color of law. Plaintiffs also ask that any question about defendants acting under color of law be answered by the court on the special verdict form. That isn't necessary. Because the parties don't dispute defendants' status as state actors, the court will simply omit that issue from the verdict form and the jury instructions.

### 8. Personal liability of defendants

LaBrec seeks to preclude defendants from offering evidence or argument that they will be personally liable for paying compensatory or punitive damages. The court will grant this motion as unopposed.

### 9. Undisclosed statements

LaBrec seeks to exclude evidence of his prior statements that defendants haven't disclosed. Defendants object on the ground that they aren't required to disclose prior inconsistent statements, *see* Fed. R. Evid. 613(a), or evidence that they will use solely for impeachment, *see* Fed. R. Civ. P. 26(a)(1)(A)(i); *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 869 (7th Cir. 2005). If defendants attempt to use any undisclosed prior statements for other reasons, LaBrec may raise an objection at trial.

### 10. Undisclosed evidence

LaBrec seeks to exclude any physical evidence that defendants haven't disclosed. LaBrec doesn't identify any specific evidence, and the court discourages parties from filing broad motions that simply ask for enforcement of the federal rules. If either side attempts to introduce

undisclosed evidence at trial, the opposing party may raise an objection then. But defendants don't object to the motion, so the court will grant it.

### 11. Appeal to jurors' self-interest as taxpayers

The motion to preclude defendant from saying or implying that taxpayers will have to fund any damages award in this case will be granted as unopposed.

### 12. Drug use and addiction

LaBrec seeks to exclude any evidence about his "use or alleged use of any illegal substances or alleged addition to any illegal substances or pain medications." Dkt. 110, at 7. Defendants' objection to this motion is similar to their objection to the motion about other lawsuits and grievances. Specifically, they say that LaBrec's "medication abuse history is relevant to Dr. Syed's determination that Plaintiff was drug-seeking." Dkt. 118, at 7.

Defendants rely on *Smith v. Hunt*, 707 F.3d 803 (7th Cir. 2013), an excessive force case in which the court allowed the defendant to put in evidence that the plaintiff had used heroin several hours before the relevant events. The trial court admitted the evidence "for the sole purpose of determining damages for pain and suffering." *Id.* at 809. Specifically, the plaintiff relied on the fact that he had asked for strong pain killers at the hospital as evidence of how extreme his pain was, so the plaintiff's prior drug use was relevant to show that the plaintiff had other reasons for requesting strong drugs, "such as a desire to ingest opiates generally." *Id.*

Defendants say that *Smith* supports a conclusion that LaBrec's prior drug use should be admitted in this case. But *Smith* is not based on the same theory that defendants are asserting, which is that LaBrec's past drug use was relevant to Syed's treatment decision. Under that theory, any past drug use by LaBrec would be relevant only if two conditions are satisfied: (1) Syed knew about the particular drug use at issue; and (2) Syed relied on that knowledge

5

when deciding how to treat LaBrec. Defendants don't say in their brief whether either of those conditions is satisfied, so the court will reserve a ruling on whether defendants may introduce evidence of LaBrec's past drug use for this purpose. Defendants should be prepared at the final pretrial conference to identify the specific evidence they want to introduce and explain why it satisfies the above two conditions.

*Smith* was not a case about medical care, and the evidence of the plaintiff's past drug use was not admitted for the purpose of determining liability. Rather, "[e]vidence of Smith's heroin use . . . was only relevant to the calculation of damages: how much pain did Smith need to be compensated for?" *Id.* at 806. Defendants don't say whether they intend to argue at trial that LaBrec's pain wasn't as severe as he alleged, so it isn't clear whether *Smith*'s reasoning applies to this case. So the court will reserve a ruling on this issue as well. If defendants wish to present this theory at trial, they should be prepared at the final pretrial conference to specifically identify the evidence of past drug use they intend to rely on. The court will then determine whether the evidence's probative value is substantially outweighed by unfair prejudice to LaBrec. And if evidence of past drug use is admitted solely for the purpose of determining damages, the parties should be prepared to propose an appropriate limiting jury instruction.

### 13. Disciplinary history

LaBrec seeks to exclude evidence of his disciplinary history while incarcerated. Defendants object, contending that they are entitled to ask LaBrec whether he has any conduct reports for lying. Defendants are correct that Rule 608(b) allows a party to ask a witness about specific instances of untruthfulness (though not to offer extrinsic evidence of those instances). But the rule "requires that the cross-examiner have reason to believe the witness actually

engaged in conduct that is relevant to her character for truthfulness." *U.S. v. Abair*, 746 F.3d 260, 264 (7th Cir. 2014).

In this case, defendants don't identify a good-faith basis for asking LaBrec about conduct reports for lying. They don't identify any specific conduct reports, but instead say that they will question LaBrec "[t]o the extent that there are conduct reports for lying." Dkt. 118, at 9. The court will reserve a ruling on this motion to give defendants an opportunity at the final pretrial conference to identify their basis for asking LaBrec about this issue.

### 14. Gunderson opinion

Holly Gunderson is a registered nurse and the health services nursing coordinator for the DOC. LaBrec seeks to exclude parts Gunderson's opinions that relate to LaBrec's claims that Anderson was negligent and violated the Eighth Amendment on September 27 by refusing to do anything other than give LaBrec ibuprofen and ice after he hurt his hand. LaBrec doesn't identify a specific opinion in Gunderson's report, but presumably he is referring to Opinion 4, in which Gunderson explains why she believes that LaBrec's treatment on September 27 "likely would not have changed" if Anderson had consulted with a doctor. Dkt. 116-1, at 3.

Gunderson gives two reasons for Opinion 4. First, prescription pain medication would have not been available to fill a prescription "at this hour of the night." *Id.* Second, a doctor would not have referred LaBrec to the hospital because "going to the ER would not change anything." By that, Gunderson meant that hospital staff likely would have x-rayed LaBrec's hand, put it in a splint, and sent LaBrec back to the prison "with directions to follow up with ortho." *Id.* at 3–4. She bases that opinion on her experience as an emergency room nurse.

The court agrees with LaBrec that Gunderson's Opinion 4 is not admissible. Gunderson's proposed testimony about the availability of medication isn't expert testimony at

all; it is fact testimony that requires personal knowledge of the circumstances at Columbia Correctional Institution during the relevant time. Gunderson provides no foundation for how she knows whether and when an on-call doctor on September 27, 2016, would have been able to obtain a prescription for LaBrec. As for the proposed testimony regarding how LaBrec would have been treated at the hospital, it is outside Gunderson's expertise to an offer an opinion on whether LaBrec would have been a candidate for emergency surgery . The court will grant this motion.

15. **Sukowaty opinion on orthopedic surgery**

Laura Sukowaty is a physician and an associate medical director for the DOC. LaBrec seeks to exclude Sukowaty's opinion on how an orthopedic surgeon would have treated LaBrec's injuries. LaBrec doesn't identify a particular opinion in Sukowaty's report, but presumably he is referring to Opinion 7, in which she says, "In my experience, most orthopedic surgeons will not emergently do surgery, unless circulation is compromised, there is a risk for significant bleeding or the fracture is open." Dkt. 115-1, at 2. LaBrec contends that Sukowaty's opinion is outside the scope of her expertise because she is not a surgeon, and her specialty is in family medicine, not orthopedics.

Defendants cite *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010), in which the court stated that "courts often find that a physician in general practice is competent to testify about problems that a medical specialist typically treats." But defendants overlook the court's qualification of that observation, which is that the court "must look at each of the conclusions [the expert] draws individually to see if he has the adequate education, skill, and training to reach them." *Id.* The court of appeals ultimately upheld the district court's determination that a doctor wasn't qualified to testify that a prisoner would not have died if she had received her

8

medications because the doctor didn't have specific knowledge of cardiology and pharmacology. *Id.* at 617–18.

A similar conclusion is appropriate here. Sukowaty provides no basis for an opinion about how an orthopedic surgeon would evaluate LaBrec's injury. Her statement about what orthopedic surgeons "will . . . do" is simply based on an observation, not her own knowledge skills, or experience in performing surgery, so it isn't proper expert testimony. The court will grant the motion to exclude this opinion.

**16. Sukowaty opinion on how she would have responded**

LaBrec seeks to exclude Sukowaty's opinion about how she would have responded if Anderson had consulted with her when LaBrec first injured his hand. LaBrec doesn't identify a specific opinion in Sukowaty's report, but presumably he is referring to Opinion 6:

> Had I been the physician on call when Mr. LaBrec injured his hand, I would have prescribed ice, ibuprofen and/or Tylenol. An xray would have been ordered non emergently. The only additional order I may have given was to immobilize the hand until an xray could have been done.

Dkt. 115-1, at 2.

LaBrec objects to this opinion on three grounds: (1) it is "speculative" because Anderson did not consult a doctor; (2) it is irrelevant because Gunderson was not employed by Columbia Correctional Institution during the relevant time, so she has no personal knowledge of "the protocols in place" there; and (3) it is unfairly prejudicial because "the jury may conflate the issues of what the doctor would have done" with the "actual issue," which is "whether Defendant Anderson's treatment of Mr. LaBrec's injury on September 27, 2016 was reasonable." Dkt. 110, at 11–12.

None of these arguments are persuasive. First, it is not speculative for Sukowaty to give an opinion on what she believes would have been the appropriate care for LaBrec based on the information available to Anderson. It is common for experts to offer their opinion on a hypothetical state of facts. Second, LaBrec's objection that Sukowaty doesn't know the prison's "protocols" is misplaced because she isn't offering an opinion about prison policy or procedure; she is offering an opinion on what the appropriate treatment would be. Third, it is not unfairly prejudicial to allow Sukowaty to offer this opinion because LaBrec's nursing expert, Jacquelyn Maki, offered an opinion that Anderson should have contacted a doctor. Defendants are entitled to respond to this opinion with their own opinion about how a doctor would have evaluated LaBrec's situation.

17. **Sukowaty opinion about gabapentin and pregabalin**

LaBrec seeks to exclude Sukowaty's opinion about the DOC's classification of gabapentin and pregabalin in 2017 and 2018. LaBrec doesn't identify a particular opinion in Sukowaty's report, but presumably he is referring to Opinion 5:

> Gabapentin and pregabalin are medications that fall into a category of "highly abusable" with the Department of Corrections. Because of this, strict protocols are in place. The patient must try and fail other medications such as amitriptyline, duloxetine and carbamezapine, as well as other treatment modalities such as physical therapy, TENS units, and topical medications prior to approval. The patient must be willing to sign a drug contract stating they will take the medications as prescribed and be willing to submit to random blood level testing. Misuse of the medication in a correctional setting jeopardizes the safety of the institution and the other patients in that institution. In addition, gabapentin, although commonly used this way, is being used off label for any neuropathic diagnosis other than postherpetic neuralgia.

Dkt. 115-1, at 2.

LaBrec objects to this opinion on the ground that Sukowaty was not employed by the DOC until 2020, so she has no basis to testify about the DOC's policies in 2017 and 2018. But LaBrec identifies no basis to believe that DOC policy has changed in that relatively short amount of time. Even if there have been changes, Sukowaty is qualified to testify about the reasons why she believes caution is advised before prescribing gabapentin or pregabalin. The court will deny this motion.

**B. Defendants' motions in limine**

**1. Past lawsuits against DOC employees**

The court will grant as unopposed defendants' motion to exclude evidence of past lawsuits against the DOC or its employees.

**2. Other legal proceedings, grievances, and disciplinary history**

The court will grant as unopposed defendants' motion to exclude evidence of defendants' disciplinary history and grievances against them that aren't related to this case.

**3. Syed's termination**

At some point after Syed stopped treating LaBrec, Syed was terminated from the DOC. Defendants seek to exclude that termination as irrelevant. LaBrec says that the termination is relevant because it was for "inappropriate content being viewed/accessed on Dr. Syed's" work computer, and LaBrec is alleging that Syed "failed to pay attention or carefully review the Plaintiff's medical condition." Dkt. 120, at 3.

The court will grant the motion to exclude the evidence. Even if the evidence isn't barred under Rule 404(b), LaBrec fails to identify a connection between viewing inappropriate content and failing to give adequate attention to his medical care. LaBrec doesn't allege that Syed was

distracted by his computer while Syed was treating him. And any marginal relevance the evidence may have is substantially outweighed by unfair prejudice to Syed.

### 4. Past physical injuries and future pain and suffering

Defendants seek to exclude any evidence "regarding causation of physical injury, permanence, future care and treatment, or future pain and suffering." Dkt. 101, at 5. LaBrec doesn't object to the portion of the motion related to permanence and future treatment and injuries, so the court will grant that motion as unopposed.

It isn't clear what defendants mean when they refer to "evidence regarding causation of physical injury." Defendants cite testimony of LaBrec's experts in which they acknowledge that neither defendant was responsible for the underlying cause of his pain, and neither defendant worsened his pain. But LaBrec hasn't made either allegation in this case. Rather, LaBrec is alleging that defendants failed to take reasonable steps to *alleviate* his pain. Defendants cite no testimony in which either of LaBrec's experts said that defendants could not have prevented additional pain. And defendants identify no reason why LaBrec himself cannot testify about the pain he experienced or why his experts cannot testify about ways that defendants could have lessened that pain or shortened its duration. The court will not prohibit LaBrec and his experts from testifying about those issues.

### 5. Dismissed claims

Defendants seek to exclude "reference to details of any of the claims that were dismissed" at summary judgment. Dkt. 101, at 7. LaBrec objects on the ground that the other claims were related to his overall course of treatment for his hand, and that other treatment "is relevant in explaining Plaintiff's injury and treatment in this case." Dkt. 120, at 4. So he says

12

that he should be permitted to present evidence "relating to the care he received for his right hand during the relevant period of time." *Id.* at 5.

The parties appear to be talking past each other. LaBrec doesn't contend that he should be permitted to discuss other *claims*, and defendants don't contend that LaBrec should be precluded from discussing other *treatment* that provides context for the claims still in the case. So the court will grant this motion. At the final pretrial conference, LaBrec should be prepared to explain what evidence he intends to present about treatment he received from other prison staff and how that evidence is relevant to the claims being tried.

### 6. Maki opinions

Jacquelyn Maki is a registered nurse who will be testifying about the nursing standard of care for LaBrec. Defendants seek to exclude any opinion "not relating to Nurse Anderson's treatment of LaBrec on September 27, 2016." Dkt. 101, at 8. Specifically, defendants point to Maki's opinions that nursing staff: (1) failed to give LaBrec instructions on October 18, 2016, regarding what medications he could take instead of ibuprofen; and (2) failed to "advocate" for LaBrec in 2018 when amitriptyline was making him nauseous. Defendants also seek to exclude any testimony about "Anderson's treatment of LaBrec on October 12, 2022." Dkt. 101, at 9. Any opinions about these issues are outside the scope of this case, so the court will grant this motion.

ORDER

IT IS ORDERED that:

1. Plaintiff Matthew LaBrec's motions in limine, Dkt. 110, are GRANTED in part and DENIED in part as follows:

a. The motion to exclude evidence of past criminal convictions is GRANTED except as to LaBrec's 2017 armed robbery conviction and the 2014 methamphetamine conviction. Defendants may introduce evidence of the title, date, and disposition of those two offenses.

b. The motion to exclude evidence about other lawsuits, claims, and grievances is GRANTED.

c. The motion to sequester nonparty witnesses is GRANTED as unopposed.

d. The motion to exclude previously undisclosed witnesses is GRANTED as unopposed.

e. The motion to exclude evidence of settlement negotiations is GRANTED as unopposed.

f. The motion to exclude evidence of awards or commendations received by defendants is GRANTED.

g. The motion to make a finding that defendants acted under color of law is DENIED as unnecessary. The parties have stipulated that defendants acted under color of law, so no finding is needed.

h. The motion to preclude defendants from arguing that they will be personally liable for any damages awarded is GRANTED as unopposed.

i. The motion to exclude any undisclosed statement by LaBrec is DENIED as to statements used for impeachment evidence. It is otherwise GRANTED.

j. The motion to exclude any undisclosed physical evidence is GRANTED as unopposed.

k. The motion to preclude defendants from stating or implying that taxpayers will fund any damages awarded in this case is GRANTED as unopposed.

l. The court reserves a ruling on LaBrec's motion to exclude evidence of his past drug use.

m. The court reserves a ruling on whether defendants may ask LaBrec about conduct reports for lying. The motion to exclude LaBrec's disciplinary history is otherwise GRANTED.

n. The motion to exclude testimony from Holly Gunderson about whether contacting the on-call doctor would likely have changed LaBrec's treatment is GRANTED.

    o. The motion to exclude Sukowaty's opinions on how an orthopedic surgeon would have treated LaBrec's injuries is GRANTED.

    p. The motion to preclude Sukowaty from offering an opinion about the treatment she would have recommended on September 27, 2016, is DENIED.

    q. The motion to exclude Sukowaty's opinions about DOC protocols for gabapentin and pregabalin is DENIED.

2. The motions in limine filed by defendants Trisha Anderson and Salam Syed, Dkt. 101, are GRANTED and DENIED in part as follows:

    a. The motion to exclude evidence about other lawsuits against defendants is GRANTED as unopposed.

    b. The motion to exclude evidence of defendants' disciplinary history and grievances against them that aren't related to this case is GRANTED as unopposed.

    c. The motion to exclude evidence of Syed's termination is GRANTED.

    d. The motion to exclude evidence about all future injuries and causation of past physical injuries is GRANTED in part. But LaBrec and his experts may testify about steps defendants could have taken to lessen LaBrec's pain.

    e. The motion to exclude references to dismissed claims is GRANTED.

    f. The motion to exclude any opinion of Jacquelyn Maki not related to Anderson's treatment of LaBrec on September 27, 2016 is GRANTED.

Entered February 3, 2023.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge